383 S.E.2d 861

**CGM CONTRACTORS, INC.**

v.

**CONTRACTORS ENVIRONMENTAL SERVICES, INC., et al.**

**No. 18315.**

Supreme Court of Appeals of West Virginia.

Aug. 2, 1989.

---

Joseph McFarland, Patrick McFarland, Redmond, McFarland & Hague, Parkersburg, for CGM.

John S. Bailey, Jr., J. Michael Weber, Davis, Bailey, Pfalzgraf & Hall, Parkersburg, for Contractors Environmental Services.

MILLER, Justice:

This case involves the novel issue of whether a corporate officer may be cross-examined about the prior criminal conviction of his corporation. The defendant, Contractors Environmental Services, Inc. (CESI), appeals from a final order of the Circuit Court of Wood County entered on September 28, 1987, which granted a new trial to the plaintiff, CGM Contractors, Inc. (CGM). On appeal, CESI asserts that it was not reversible error to question the vice president of CGM about a prior felony conviction of that corporation; consequently, the trial court should not have granted CGM's motion for a new trial.

I.

CESI and CGM specialize in heavy construction. In 1977, the two companies entered into a barter agreement or trade-out system. In essence, the agreement provided that CESI and CGM would use each other's construction equipment without charge. Periodically, representatives from the two companies would meet, ascertain the fair rental value of the equipment, and balance the respective accounts. The last such meeting between the companies occurred on March 21, 1985. According to CGM, the companies balanced their accounts and agreed that there would be immediate rental charges on any future trades. CESI contends that the parties failed to reach an agreement during the March 21, 1985 meeting and decided to continue negotiations at a later date. Thereafter, the parties continued to use each other's construction equipment.

In September, 1985, CGM filed suit against CESI in the Circuit Court of Wood County. CGM alleged breach of contract and sought approximately $43,000 for monies owing for equipment rental. CESI's counterclaim contended that CGM was in arrears under the barter agreement.

A trial was held in June, 1987. Initially, an *in camera* hearing was held to determine whether CESI could impeach CGM's office manager, Alvin Smith. CESI wanted to ask Alvin Smith whether CGM had been convicted of a felony. CESI established that CGM had pled guilty to the crime of mail fraud in violation of 18 U.S.C. § 1341 (1949) and 18 U.S.C. § 1342 (1952). Both of these sections provide for punishment in excess of one year. CGM's guilty plea was entered on November 14, 1983, or approximately four years prior to this trial. The trial court refused to allow CESI to question Alvin Smith on this issue because he was not an officer of CGM. However, the trial court ruled that the prior conviction could be used for impeachment if established by documentary evidence or through the testimony of a corporate officer of CGM.

After the *in camera* hearing, the vice president of CGM, Robert Smith, was called as a witness. During cross-examination, CESI's attorney asked: "Mr. Smith, was CGM convicted of a felony incident to the Pond Run project?" Initially, Robert Smith responded: "I really don't know the answer to that." Following a brief recess, the question was reread into the record, whereupon Robert Smith answered: "I didn't know what you meant by 'Felony,' and yes, we were, the details I do not have." Immediately thereafter, the trial court gave a cautionary instruction, which advised the jury that this evidence was only admissible as affecting credibility. The jury's verdict found that neither party should recover from the other.

CGM filed a motion for a new trial asserting that the trial court committed reversible error by allowing CESI to question

Robert Smith about CGM's prior mail fraud conviction. The trial court agreed, set aside the jury verdict, and granted CGM a new trial.

## II.

As a preliminary matter, we discuss when a witness can be impeached by a criminal conviction, which is found in Rule 609 of the West Virginia Rules of Evidence. Rule 609(a)(2) relates to all witnesses except the criminal defendant, and it provides:

> "All Witnesses Other than Criminal Defendants.—For the purpose of attacking the credibility of any witness, other than a witness accused in a criminal case, evidence that he has been convicted of a crime shall be admitted if elicited from him during cross-examination or established by public record but only if
>
> "(A) the crime was punishable by imprisonment in excess of one year under the law under which he was convicted and the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect to the parties and embarrassment to the witness or
>
> "(B) the crime involved dishonesty or false statement, regardless of the punishment."

CGM does not dispute that its previous mail fraud conviction is a crime involving "dishonesty or false statement" and is, therefore, within Rule 609(a)(2)(B). This category of crimes is often called *crimen falsi*.[1] *See, e.g., United States v. Toney,* 615 F.2d 277 (5th Cir.), *cert. denied,* 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980); *United States v. Kuecker,* 740 F.2d 496 (7th Cir.1984); *United States v. Brashier,* 548 F.2d 1315 (9th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); *G.M. Mosley Contractors, Inc. v. Phillips,* 487 So.2d 876 (Ala. 1986). *See generally* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4.2(E) (2d ed. 1986). CGM does, however, argue that the court should have applied a balancing test to determine if the probative value of the impeachment of credibility through the prior criminal act is outweighed by its prejudicial effect.

Our Rule 609 is patterned after Rule 609 of the Federal Rules of Evidence, but it differs from the federal rule in that under our Rule 609(a)(1) impeaching a criminal defendant is limited to specified convictions.[2] Rule 609(a)(2) controls the impeachment of all other witnesses in both civil and criminal cases. It divides the criminal convictions which can be used to impeach a witness other than a criminal defendant into two categories: (A) crimes "punishable by imprisonment in excess of one year," and (B) crimes "involving dishonesty or

---

1. *Crimen falsi* generally refers "to crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on a witness' propensity to testify truthfully." *Black's Law Dictionary* 335 (5th ed. 1979).

2. Rule 609(a)(1), W.V.R.Evid., provides:

   "(a) *General Rule.* (1) Criminal Defendants.—For the purpose of attacking the credibility of a witness accused in a criminal case, evidence that he has been convicted of a crime shall be admitted if elicited from him during cross-examination or established by public record, but only if the crime involved perjury or false swearing."

   Rule 609(a)(1) codifies Syllabus Point 1 of *State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977):

   "In the trial of a criminal case, a defendant who elects to testify may have his credibility impeached by showing prior convictions of perjury or false swearing, but it is impermissible to impeach his credibility through any other prior convictions."

   Recently, we modified the *McAboy* limitation in Syllabus Point 9 of *State v. Clements,* 175 W.Va. 463, 334 S.E.2d 600, *cert. denied,* 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137 (1985):

   "In the trial of a criminal case, a defendant who elects to testify may have his credibility impeached by showing prior convictions of perjury or false swearing and criminal convictions of making false statements with intent to deceive, but it is impermissible to impeach his credibility through any other prior convictions."

false statements, regardless of the punishment."[3]

Our language in Rule 609(a)(2)(A) and (B) is similar to the federal rule. Before evidence of a conviction may be admitted under Rule 609(a)(2)(A), a balancing test is required to determine whether "the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect to the parties and embarrassment to the witness[.]" For the specific crimes contained in Rule 609(a)(2)(B), commonly called *crimen falsi*, there is no balancing test except as provided in Rule 609(b).

Rule 609(b) imposes a balancing test before the admission of any criminal conviction which is more than ten years old to determine whether "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." It also requires written notice to be given to the opposite party of the intent to use evidence of a prior conviction.[4]

■ Thus, Rule 609, as applied to the facts of this case, would not require the trial court to apply a balancing test because the conviction was for a *crimen falsi* and was less than ten years old. Crimes under Rule 609(a)(2)(B) do not require an initial balancing test, and the general balancing test under Rule 609(b) is not triggered unless the conviction is more than ten years old. Thus, the trial court did not

err in failing to apply the balancing test contained in Rule 609(b).

### III.

The more difficult issue is CESI's contention that it was not reversible error for the trial court to admit CGM's mail fraud conviction for impeachment purposes through the testimony of CGM's vice president. Neither party cites a case which supports or refutes this proposition. Our research has uncovered only two cases which appear to address this issue. Commentators are silent on the question. The point is vexatious simply because a corporation, as an artificial entity, speaks and acts only through its officials.

■ Most authorities acknowledge that a corporate crime is the act of its personnel and need not be authorized or ratified by its officials. It is sufficient if the officials were exercising customary powers on behalf of the corporation. *See State v. B. & O. R.R. Co.*, 15 W.Va. 362 (1879). *See generally* 18B Am.Jur.2d *Corporations* § 2135, *et seq.* (1985). Thus, to a substantial degree, the crime of the corporation is interwoven with the acts of its officials.[5] Such criminal acts are reflective of the character of the persons who manage the corporation. Consequently, it would seem reasonable to utilize a corporate crime to impeach a corporate official's credibility if the official is connected to the crime, so

---

**3.** By separating the criminal defendant's impeachment of credibility through convictions in Rule 609(a)(1), we avoided the problem that had created a conflict in the federal courts—whether in a civil trial, a balancing test applies to impeachment by criminal convictions. The conflict arose because of the use of the term "defendant" in Federal Rule 609(a)(1). The United States Supreme Court, after deploring the draftsmanship of Rule 609 in *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989), resolved the conflict by holding that the balancing test under Rule 609(a)(1) did not apply. This result was based on the legislative history of Rule 609, but the court inexplicably did not discuss the general balancing test in Rule 609(b).

**4.** Rule 609(b), W.V.R.Evid., provides:

"*Time Limit.*—Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date

of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

**5.** The commission of a statutory crime by an employee of a corporation within the scope of his authority is a crime of the corporation, whether a higher corporate official has knowledge of the act or has ratified it. The rule may be otherwise as to common law crimes where proof of *mens rea* is essential. 18B Am.Jur.2d *Corporations* § 2137 (1985).

long as the conviction meets the Rule 609 criteria.

This was the result reached in *United States v. Trenton Potteries Co.*, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927), where twenty individuals and twenty-three corporations appealed a conviction of violating the Sherman Anti–Trust Act. During trial, one of the defendant corporations called as a witness the manager of another corporation. The manager was not an individual defendant. On cross-examination, the government asked the manager if he was aware that his employer had previously pled guilty to a violation of the Sherman Act. The Supreme Court found that admission of this evidence would not be improper "if admissibility were urged on the ground that it was directed to the bias of the witness ... or that it was preliminary to showing his implication in this supposed offense, and thus affecting his credibility." 273 U.S. at 404–05, 47 S.Ct. at 382, 71 L.Ed. at 708. (Citations omitted).

A somewhat more detailed discussion occurred in *State ex rel. Nesbitt v. Allied Materials Corp.*, 312 F.Supp. 130 (W.D.Okla.1968), which involved antitrust convictions of a corporate defendant. The district court held that the corporation's conviction was admissible through cross-examination of a witness, if the witness himself had also been convicted or was an officer, director, or managing agent of the corporation that had ·been convicted. This case was decided before the adoption of the Federal Rules of Evidence and the court ·placed considerable reliance on *Trenton Potteries, supra.* The court also cited civil cases where witnesses were impeached by their own criminal convictions. *E.g., Pfotzer v. Aqua Systems, Inc.*, 162 F.2d 779 (2d Cir.1947); *Kilpatrick v. Commissioner of Internal Revenue*, 227 F.2d 240 (5th Cir. 1955); *Pure Oil Pipe Line Co. v. Ross*, 51 F.2d 925 (10th Cir.1931).

Both *Trenton Potteries* and *Nesbitt* suggest that impeachment of a witness through a criminal conviction of the corporation by whom he is employed is permissible subject to certain limitations. The witness must have held a managerial position at the time the crime occurred such that it may be fairly inferred that he shared responsibility for the criminal act, or have actually participated in the criminal act. The existence of either condition should be determined at an *in camera* hearing. Additionally, the requirements of Rule 609 must be met. Finally, the jury should be instructed that evidence of the criminal act is only for the purpose of impeaching the witness's credibility.

Because the circuit court did not have the benefit of this opinion in determining this evidentiary point, we remand the case so that the court may reconsider its ruling under the guidelines herein established and, if necessary, take additional evidence as to the relationship of the witness to the corporate crime.

Remanded.