416 S.E.2d 471

Earlene BLANKENSHIP, Plaintiff
Below, Appellee

v.

MINGO COUNTY ECONOMIC OPPOR-
TUNITY COMMISSION, INC., De-
fendant Below, Appellant.

No. 20282.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 21, 1992.

Decided March 24, 1992.

Rehearing Denied May 13, 1992.

Bernard Spaulding, Logan, for the appellee.

Cecil C. Varney, Varney Law Offices, Larry E. Thompson, Thompson & Thompson, Williamson, for the appellant.

PER CURIAM:

The Mingo County Economic Opportunity Commission (hereinafter EOC) appeals from a jury verdict entered in the Circuit Court of Mingo County in favor of a former employee of the EOC, Earlene Blankenship, who brought suit against the EOC seeking to be rehired under an implied contract theory. The EOC asserts numerous assignments of error and seeks to have the jury verdict set aside. Upon consideration of the record before us, we conclude that there is no reversible error.

I

Ms. Blankenship was employed by the EOC as one of five district directors. She earned an annual salary of approximately $15,000.00, which was paid with funds received by the EOC from Community Service Block Grant Funds (hereinafter CSBG).

In the fall of 1987, Herbert Harmon was appointed acting executive director of the EOC by the EOC Board of Directors. Thereafter, in a letter dated December 4, 1987, Mr. Harmon gave layoff notices to all employees working for the EOC who were paid by CSBG because the EOC was unable to make the payroll. Ms. Blankenship received one of these notices and was laid off.

Carl Bradford was later appointed by Arch Moore (hereinafter Moore), who was then serving as governor, to serve as a temporary trustee director at the EOC. Ms. Blankenship subsequently received a letter from Mr. Bradford notifying her, as a former employee of the EOC who had been laid off, that the EOC was filling positions for community service aides. Mr. Bradford advised Ms. Blankenship that a resume and references were to be sent to him at the EOC office by August 19, 1988.

Ms. Blankenship sent a response to Mr. Bradford's letter, dated August 19, 1988, stating that she was more interested in full-time employment but would accept part-time employment to supplement her income. She further advised him that she was in a "legal bind" as to whether she would be available for employment and requested that she be considered for any

positions which opened after September 12, 1988.

In December of 1988, four people were hired by the EOC to fill the community service aide positions. Ms. Blankenship was not one of those chosen for the position.

Ms. Blankenship filed a complaint against the EOC on October 6, 1989, alleging that she was entitled to be rehired by the EOC by virtue of a provision in the EOC's personnel policy stating that the priority for filling a vacancy within the agency should be given to any staff person or former staff person displaced as a direct result of the loss or reduction of funding.

Four days before the trial was scheduled to begin in this case, the trial court notified the parties that a hearing would be held *sua sponte* concerning a subpoena that was issued for former Governor Arch Moore to appear as a witness to testify in the case. The trial court advised the parties at the beginning of the hearing that Moore had called the court to say he knew nothing about the case and that he could not offer anything as a witness that would be of probative value in the case. Moore was also not available to appear at the trial. The trial court, after hearing the arguments of both parties, concluded that the subpoena should be quashed.

After the trial concluded, the jury returned a verdict in favor of Ms. Blankenship and awarded her damages in the amount of $51,090.00. The EOC filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Following a hearing on that motion, the trial court denied the motion. The trial court subsequently entered an order on November 26, 1990, reflecting the jury's verdict and its judgment on the motion. The EOC now appeals from that order.

## II

The EOC first contends that the trial court erred in failing to either direct a verdict in its favor or grant a new trial on

the ground that there was no evidence introduced by Ms. Blankenship which established that the personnel policy in question was formally adopted by the EOC. Ms. Blankenship maintains that it was established, through the testimony of Rebecca Sheppard, a former EOC district director, and Mark Timothy Crum, a former executive director of the EOC, that the personnel policy was used at the EOC.

Before we address the issue of whether the evidence adduced by Ms. Blankenship established that the personnel policy in question was the policy of the EOC, we must first consider whether the jury could have concluded from the evidence that a certain provision of that policy created a binding contract.[1]

The provision in the personnel policy upon which Ms. Blankenship relied as creating a binding contract states:

When and if a vacancy occurs within the agency, the priority and obligations for filling the vacancy should be given to: Any staff person or former staff person displaced or being displaced from employment as a direct result of the loss of funding and/or reduction of funding.

■ This Court has recognized that employee handbooks or policy manuals containing express or implied promises may create a binding contract. *Collins v. Elkay Mining Co.*, 179 W.Va. 549, 555, 371 S.E.2d 46, 52 (1988); *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986). We specifically held in syllabus point 5 of *Cook:*

A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.

■ Whether the personnel policy constitutes an agreement binding the parties is

---

1. As its second assignment of error, the EOC argues that the trial court erred in failing to rule as a matter of law that the section of the personnel policy giving priority to displaced employees in filling vacancies at the EOC does not form the basis of a contract.

usually a question for the jury as we recognized in syllabus point 4 of *Cook:* "Generally, the existence of a contract is a question of fact for the jury."

In the case before us, Ms. Blankenship established at the jury trial that she was employed by the EOC as a district director. Mr. Harmon, who was acting director at the time Ms. Blankenship was laid off, testified that she was laid off as a result of the lack of funding. Moreover, the jury heard the testimony of Ms. Blankenship, Ms. Sheppard, Mr. Crum and Mr. Harmon identifying the personnel policy as the one used at the EOC at the time of the layoffs. Furthermore, a copy of the personnel policy was admitted into evidence.[2] There was no evidence introduced by the EOC which contradicted the testimony of those witnesses regarding the personnel policy.

When considering this evidence in a light most favorable to Ms. Blankenship, it is clear that the trial court did not err in denying the EOC's motion for a directed verdict.[3] The evidence showed that the personnel policy was used at the EOC and that it included a provision giving priority to displaced employees in filling vacancies at the EOC. The evidence adduced by Ms. Blankenship established a *prima facie* case. Thus, it was within the province of the jury to ascertain from the facts whether the policy in question was the EOC's and whether its provisions constituted a binding contract.[4]

### III

The EOC next asserts that the trial court erred in quashing the subpoena of former Governor Arch Moore and in refusing to allow it to introduce letters written by Moore. Ms. Blankenship maintains that the testimony of Moore would have no bearing on the case and that the EOC never attempted at trial to introduce the letters written by Moore.

The EOC obtained a subpoena for the attendance of Moore at the trial pursuant to Rule 45(e)(1) of the *West Virginia Rules of Civil Procedure*. Rule 45(e)(1) provides that "[a]t the request of any party subpoenas for attendance at a hearing or trial shall be issued by the clerk of the court in which the hearing is held or the action is pending."

At the hearing on the issuance of the subpoena to former Governor Moore, the trial court represented to the parties that Moore's secretary advised the court that he would not be able to be in Mingo County on the date of the trial or anytime during the week the trial was scheduled. The trial court pointed out that the EOC had waited "until the last minute" to subpoena Moore and that the likelihood of Moore appearing at trial was "slim and none" because Moore had pled guilty to several criminal charges

2. The personnel policy introduced into evidence as plaintiff's exhibit 4 states that "[t]hese policies have been approved by the Board of Directors of the Mingo County E.O.C." and that "[e]ach employee shall receive, upon appointment, a copy of this Personnel Policy[.]"

3. We recognized the standard of review upon a motion to direct a verdict in syllabus point 1 of *Cook* :

' "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syl., *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85, 163 S.E. 767 (1932).' Syl. pt. 1, *Totten v. Adongay,* [175] W.Va. [634], 337 S.E.2d 2 (1985).

4. The EOC also asserts that the circuit court should have directed a verdict in its favor because Ms. Blankenship was given the opportunity by Mr. Bradford to apply for the community service aide position but failed to follow through with the application requirements. However, viewing the evidence in a light most favorable to Ms. Blankenship, we find that the trial court did not err in denying the motion to direct a verdict because the evidence showed that Ms. Blankenship sent a letter to the EOC stating that she would be interested in any job openings after September 12, 1988, and that the positions for the community service aides were not filled until December of 1988. Thus, this issue should not have been removed from the jury's consideration.

Finally, our determination that the contract issue was a jury question also disposes of the EOC's assignment of error that the trial court should have granted its motion for summary judgment.

in federal court.[5] The trial court then determined that it would quash Moore's subpoena and allow the EOC to introduce Moore's letters into evidence ·through Mr. Bradford or another witness who could testify how the EOC was funded.

■ Generally, the trial court's determination to quash a subpoena is addressed to the sound discretion of the trial court and is subject to review for abuse of discretion. *See Manning v. Lockhart,* 623 F.2d 536, 539–40 (8th Cir.1980) (trial court abused its discretion in refusing to issue a subpoena requiring attendance of witness when record showed that his testimony was relevant); *Swartz v. Pittsburgh Public Parking Authority,* 63 Pa.Cmwlth. 434, 439 A.2d 1254, 1255–56 (1981) (trial court did not abuse its discretion in quashing subpoenas issued to Public Parking Authority and city counsel members because condemnees failed to show how the testimony of the subpoenaed persons would be relevant to their case). *See* 5A James W. Moore & Jo D. Lucas, *Moore's Federal Practice* § 45.09 (2d ed. 1991); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463 (1971).

■ We do not find from the record before us that the trial court abused its discretion in quashing Moore's subpoena. Moore, who had been indicted in federal court and pled guilty, could not appear at trial. The record also shows that the EOC was not diligent in its efforts to depose or subpoena him. Moreover, it appears from the record that the EOC could have introduced the evidence regarding the EOC's funding through another witness.

The EOC further argues, however, that the trial court refused to allow the two

letters written by Moore into evidence at the trial regarding the restructuring of the EOC. One letter essentially outlined the problems at the EOC and suggested that a temporary trustee director, who would report directly to the Governor's Office of Community and Industrial Development, be appointed to oversee all EOC programs. The other letter returned operational authority to the EOC Board and eliminated the position of district director.[6]

However, upon review of the transcript of the trial, it does not appear that counsel on behalf of the EOC ever attempted to introduce those letters into evidence. While Mr. Bradford was testifying on behalf of the EOC regarding his responsibilities as the temporary EOC trustee director, counsel on behalf of Ms. Blankenship objected on the grounds that a proper foundation had not been laid for him to testify about his duties at the EOC. Counsel on behalf of the EOC asked the trial court's permission to excuse Mr. Bradford so that another witness could be called to lay a foundation for his testimony. Counsel on behalf of the EOC never called Mr. Bradford back to the stand nor did he offer Moore's letters or vouch the record regarding what he intended to place into evidence.

■ This Court explained in syllabus point 8 of *Torrence v. Kusminsky,* 185 W.Va. 734, 408 S.E.2d 684 (1991):

'If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal.' Syllabus Point 1,

---

**5.** The trial court gave the following explanation of its decision to quash Moore's subpoena:

Here is where we stand with this issue. You come in and tell me former Governor Moore's testimony is essential to the defense in this case. If that were the case, why did you wait until the last minute to subpoena him, the facts and circumstances being as they are? Now, it's going to be virtually impossible to get his deposition or to get him here for trial. If his testimony is essential to your case, you could have and should have

secured his testimony for use at trial. Former Governor Moore has been indicted on four or five federal counts and has pled guilty or is about to plead guilty and he is involved in some other trial going on in federal court. The chance[s] he's going to show up here for trial are slim and none, frankly.

May 10, 1990 hearing, tr. at 12.

**6.** The second letter from Moore was addressed to Columbia DeLong, who was a witness in this case.

*Horton v. Horton,* 164 W.Va. 358, 264 S.E.2d 160 (1980).

### IV

■ The EOC further contends that the trial court erred in denying the EOC's motion to excuse a juror, Celene Fitch, who was related by marriage to Ada Farley, another former district director who had a similar suit pending against the EOC. Ms. Blankenship asserts that counsel on behalf of the EOC never made a motion that Juror Fitch be removed for cause.

■ This Court has recognized that the test of a qualified juror is whether a juror can render a verdict based on the evidence, without bias or prejudice, according to the instructions of the court. *Davis v. Wang,* 184 W.Va. 222, 225, 400 S.E.2d 230, 233 (1990); syl. pt. 1, *State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974). Furthermore, we stated in *Davis* that "the appearance and bearing of the juror in answering questions is of great importance and thus, the decision of the trial court as to his [or her] eligibility should control." 184 W.Va. at 225, 400 S.E.2d at 233. Finally, on a motion for a new trial, the burden is on the complaining party to show that he or she has been prejudiced by the presence of the juror on the jury. Syl. pt. 3, *Malone v. Monongahela Valley Traction Co.,* 105 W.Va. 60, 141 S.E. 440 (1928).

In the case before us, Juror Fitch stated that Ada Farley was her mother-in-law's half sister. Juror Fitch explained that she and Ms. Farley were "not real close" and represented to the court that she could return a fair and impartial verdict based solely on the law and evidence in this case. The EOC made no motion to strike Juror Fitch for cause.[7] Thus, based on the

record before us, we do not find any abuse of discretion by the trial court.

### V

The EOC also asserts that the trial court erred in prohibiting Ms. DeLong and Mr. Bradford from testifying as to their first-hand observations of the EOC Board meeting pursuant to Rule 803(1) of the *West Virginia Rules of Evidence.* However, Ms. Blankenship contends that because the EOC was attempting to introduce the minutes of the EOC Board meeting, it should have called as a witness either the person who served as secretary of the EOC at the time the meeting was held or the custodian of the minutes of the meeting.

The EOC relies on Rule 803(1) of the *West Virginia Rules of Evidence,* which provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: [¶] (1) *Present Sense Impression.*—A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."[8]

■ It appears that the EOC's reliance on Rule 803(1) is misplaced. The Board meeting to which the EOC sought to have Mr. Bradford and Ms. DeLong testify regarding their "present sense impression" had been held approximately two and one-half years before the trial in this case was conducted. The EOC was not attempting to introduce statements made by a declarant at the time he or she was perceiving an event or immediately thereafter. Instead, the EOC was attempting to establish Mr. Bradford's duties at the EOC by introducing the minutes from the EOC's Board meeting. The admissibility of the minutes

---

7. The following exchange between the trial court and counsel on behalf of the EOC was had out of the hearing of the jurors:

 MR. VARNEY: What I'm afraid of is it will come out in evidence Ada Farley had the same job and was laid off at the same time.
 THE COURT: It will come out in evidence?
 MR. VARNEY: Yes. The letter was made out to all district directors.
 THE COURT: Was it sent to this woman, Ada Farley?

MR. VARNEY: It was addressed to all workers, and somehow it may come out Ada Farley was—
 THE COURT: I understand.
Trial tr. at 30.

8. We noted in *State v. Smith,* 178 W.Va. 104, 109–110 n. 4, 358 S.E.2d 188, 192–93 n. 4 (1987) that a comprehensive discussion of Rule 803(1) can be found in *Booth v. State,* 306 Md. 313, 508 A.2d 976 (1986).

of the EOC's Board meeting would not fall under Rule 803(1) relating to "present sense impression."

The admissibility of business records of regularly conducted business activity is primarily controlled by Rule 803(6).[9] This Court recognized in *State v. Fairchild,* 171 W.Va. 137, 147, 298 S.E.2d 110, 120 (1982), a case decided prior to the adoption of the current *West Virginia Rules of Evidence,* that "[i]t is not necessary that the maker of the record be called to testify to verify the authenticity of the entry." We further explained that the trustworthiness of the entry can be established through the testimony of the custodian of the records who can show that the record was kept as an established procedure within the business routine. *Id.* We observed, however, that "in no instance may records of this kind prove themselves." *Id.*

 The trial court in the case before us did not rule that the minutes of the EOC meeting were inadmissible but instead directed the EOC to introduce those records through the testimony of the secretary who prepared the minutes or the custodian of the records containing the minutes of the EOC Board meeting.[10] It does not appear that the trial court's ruling on this issue was inconsistent with the provisions of Rule 803(6).[11]

### VI

As its next assignment of error, the EOC contends that the trial court erred in grant-

ing two motions in limine which barred the EOC from impeaching Ms. Blankenship and from introducing evidence to show the reasons for eliminating the positions of district director at the EOC. Ms. Blankenship maintains that the trial court properly ruled under Rule 403 of the *West Virginia Rules of Evidence* that the prejudicial possibilities of this evidence outweighed its probative value.[12]

With respect to the issue of whether Ms. Blankenship could be impeached with evidence of a criminal conviction, this Court specifically addressed the application of Rule 609(a)(2) in *CGM Contractors, Inc. v. Contractors Environmental Services, Inc.,* 181 W.Va. 679, 383 S.E.2d 861 (1989). We recognized in syllabus point 2 of *CGM Contractors* that:

Rule 609(a)(2) of the West Virginia Rules of Evidence divides the criminal convictions which can be used to impeach a witness other than a criminal defendant into two categories: (A) crimes 'punishable by imprisonment in excess of one year,' and (B) crimes 'involving dishonesty or false statements regardless of the punishment.'

 The balancing test found in Rule 403 does not apply to impeachment by *crimen falsi* convictions under Rule 609(a)(2). We specifically observed in *CGM Contractors* that "[f]or the specific crimes contained in Rule 609(a)(2)(B), commonly called

---

**9.** Rule 803(6) provides, in relevant part:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness,* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

(emphasis added)

**10.** We note that the refusal of the trial court to admit admissible evidence is presumed to be prejudicial where it does not appear that a verdict against a party objecting was unaffected

thereby. *Tedesco v. Weirton General Hospital,* 160 W.Va. 466, 472, 235 S.E.2d 463, 466 (1977). However, in the present case, it does appear that the jury's verdict would have been unaffected by this evidence even if the trial court would have ruled that the minutes of the EOC Board meeting were inadmissible.

**11.** We note that counsel on behalf of the EOC did not vouch the record regarding what he intended to establish through the introduction of those minutes.

**12.** Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

*crimen falsi*, there is no balancing test except as provided in Rule 609(b)." 181 W.Va. at 683, 383 S.E.2d at 865. The United States Supreme Court has also held that the balancing test found in Rule 403 does not apply to impeachment by *crimen falsi* convictions under Rule 609(a)(2)(B). *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 109 S.Ct.1981, 104 L.Ed.2d 557 (1989).

 Thus, under our holding in *CGM Contractors* and the Supreme Court's holding in *Green,* we find that the trial court was required to allow the EOC to introduce evidence of Ms. Blankenship's conviction for mail fraud for impeachment purposes.[13]

However, it appears from the record that the trial court's disallowance of the impeachment testimony was harmless error. The disposition of this case was based primarily on the jury's determination that the terms of the EOC personnel policy regarding displaced employees created a binding contract, and that Ms. Blankenship, who was a displaced employee, was not given priority in the filling of a new position. Most of the evidence on these two issues consisted of written documents such as the personnel policy, the layoff notice sent to Ms. Blankenship, the letter from Mr. Bradford to Ms. Blankenship regarding the new position, and Ms. Blankenship's written response to Mr. Bradford's letter. Moreover, there was testimony of witnesses other than Ms. Bradford concerning the use of the personnel policy at the EOC. Ms. Blankenship's testimony served primarily to support the documents which were introduced into evidence,[14] with the exception of her testimony regarding damages.[15] Therefore, we do not find from the record that the EOC was prejudiced by the trial court's ruling that it could not introduce

Ms. Blankenship's conviction for mail fraud.

The EOC also argues that the trial court erred in granting Ms. Blankenship's motion in limine barring it from introducing into evidence the alleged wrongdoing of other employees at the EOC. The trial court believed that any evidence regarding the alleged wrongdoing of other employees of the EOC would be highly prejudicial and extremely unfair to Ms. Blankenship's case. However, the trial court, in granting the motion in limine, advised counsel on behalf of the EOC that "[y]our objection is noted, and you can put anything in the record you want when we're done here." The EOC never vouched the record regarding the rejected evidence.[16] Thus, under our holding in *Torrence, supra,* we shall not review this matter.

### VII

The EOC further argues that the trial court erred in failing to grant a continuance because it was clear that neither party was prepared to go to trial. Ms. Blankenship contends that the EOC was not diligent in its discovery and that it has not identified any newly discovered evidence or evidence not in its possession at the start of the trial which would indicate that it was prejudiced by the denial of a continuance. Both parties cite *Templeton v. Templeton,* 179 W.Va. 597, 371 S.E.2d 175 (1988).

 This Court stated in syllabus point 1 of *Templeton:*

'The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that

---

**13.** Apparently Ms. Blankenship's conviction involved her misrepresentation to an insurance carrier regarding who was driving an automobile.

**14.** Two of those documents which were introduced during Ms. Blankenship's testimony were the EOC's exhibit 4, the letter from Mr. Bradford to Ms. Blankenship, and the EOC's exhibit 5, Ms. Blankenship's response to that letter.

**15.** The EOC did not raise the damage issue as a separate assignment of error although it points out that Ms. Blankenship was awarded damages in the amount of her salary as a district director rather than at the amount of the salary of a community service aide. However, we note that the EOC's inquiry at the hearing about the damage issue was limited.

**16.** The EOC claims that the trial court never gave it the opportunity to vouch the record.

its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made. Syl. pt. 1, *State v. Jones,* 84 W.Va. 85, 99 S.E. 271 (1919).' Syllabus Point 1, *State v. Davis,* [176] W.Va. [454], 345 S.E.2d 549 (1986).

■ We do not find from the record before us that the trial court's denial of a continuance worked injury and prejudice to the rights of the EOC. The EOC claims that it was not given a sufficient opportunity to depose Ms. Blankenship and that it was surprised by several rulings relating to former Governor Moore. Yet, it appears from the record that the EOC was not diligent in its efforts to depose either Ms. Blankenship or former Governor Moore. Moreover, as we previously pointed out, the EOC never attempted to introduce Moore's letters into evidence. Thus, we conclude that the trial court did not abuse its discretion in denying the continuance.

## VIII

The remaining assignments of error concern the jury instructions and the trial court's charge to the jury. We stated in *Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 498, 345 S.E.2d 791, 797 (1986) that we "will presume that a trial court acted correctly in giving or refusing instructions, unless the instructions given were prejudicial or the instructions refused were correct and should have been given."

■ After reviewing the instructions in this case as a whole, we find that they were not prejudicial to the EOC and that there was evidence to support them. Moreover, we do not find that the EOC was prejudiced by the trial court's statement in its charge to the jury that it did not "favor the cause of either litigant."

Thus, for the reasons set forth herein, we conclude that the judgment of the Circuit Court of Mingo County should be affirmed.[17]

Affirmed.

**17.** Although the EOC also assigned as error the trial court's denial of its special interrogatories to the jury, the only reference to those interrogatories we can find in the transcript is the EOC's objection that the trial court did not consider them. The EOC did not vouch the record nor were the special interrogatories discussed any further. Therefore, we shall not address this assignment of error.

NEELY and WORKMAN, JJ., dissent and would reverse this case.