483 S.E.2d 92

**William A. WILKINSON and Tereca S. Wilkinson, Plaintiffs Below, Appellees,**

v.

**Dick BOWSER and Barbara Bowser, d/b/a Bowser Construction, Defendants Below, Appellants.**

**No. 23295.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1996.

Decided Dec. 19, 1996.

George J. Cosenza, Cosenza & Underwood, Parkersburg, for Appellees.

George M. Torres, Parkersburg, for Appellants.

WORKMAN, Justice:

Dick and Barbara Bowser, doing business as Bowser Construction (hereinafter "the Appellants"), appeal a judgment of the Circuit Court of Wood County for the Appellees, William A. and Tereca S. Wilkinson, in a suit for breach of a contract to perform home improvements. The Appellants assert that the $23,525 verdict was excessive and not supported by the evidence, and that the circuit court wrongfully allowed the jury to hear evidence regarding Dick Bowser's conviction for an unrelated misdemeanor. For the reasons set out below, we affirm the judgment entered by the circuit court pursuant to the jury verdict.[1]

In June 1992, the Appellees contracted with the Appellants to perform extensive improvements to a residential property owned by the Appellees. The contract price for the work was $24,918. The Appellees borrowed $25,000 from the City of Parkersburg, pursuant to a housing program, to finance the project. According to the Appellees, the Appellants failed to make the improvements in a good and workmanlike manner, and the Appellees sued for $50,000 in damages.

The case was tried in the Circuit Court of Wood County. At trial, the Appellees presented the testimony of a contractor, Joel Stout, who had examined the house after the Appellants had worked on it. He noted bowed siding, leaking gutters, poorly installed windows, lack of insulation, and other problems, and estimated that it would cost $8,275 to repair the faulty workmanship and finish the improvements the Appellants had contracted to perform. The Appellees next presented a real estate appraiser, Larry McDaniel, who testified about the value of the house. He estimated that the value of the house, with the improvements the Appellants agreed to perform, would be $61,000. To determine the value "as is," the appraiser subtracted the $8,275 necessary to complete the improvements, and also 25% of its finished value, or $15,250, which he termed a "reduction by purchaser." This calculation resulted in a current value of $37,475. By subtracting the "as is" value ($37,475) from the finished value ($61,000), Mr. McDaniel concluded that the damage resulting from the Appellants' failure to complete the project in a workmanlike manner was $23,525.[2]

The appraiser explained the "reduction by purchaser" as an allowance for a typical purchaser's reaction to the general condition of the home. The appraisal report states that in the appraiser's opinion a purchaser would discount the value of this house substantially due to the cost and inconvenience of buying a home in a state of disrepair, and the uncertainty of the date on which work would be completed. The report indicates further that the amount of the discount was determined with reference to other market sales in which the price of homes was affected by disrepair, lack of care, or fire damage.

The Appellants presented their own appraiser, Jackie Mullenix, who testified that in her opinion the "as is" value of the house was $46,000. Mullenix did not estimate what the value would be with improvements, and did not give any opinion as to any change in value resulting from work performed by the

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 16, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

2. The Appellees' appraiser noted that he had not included in his estimate of damages any amount for loss of income or inconvenience to the Appellees. His estimate was limited to the effect of the breach of contract on the value of the house itself. Presumably, the Appellees also lost the enjoyment of the house during the time that this action was pending, if they intended to occupy it themselves, or either rental income or interest on the proceeds of sale of the house, if they intended either to rent it out or sell it when completed.

Appellants. The briefs indicate that Appellant Dick Bowser and certain subcontractors who worked on the house also testified, but their testimony is not part of the record on appeal.

The only portion of Appellant Dick Bowser's testimony before the Court relates to the admission of his plea of guilty to a misdemeanor charge of obstruction of justice, West Virginia Code § 61–5–17 (Supp.1996), entered in an unrelated matter the week before trial. During cross-examination of Mr. Bowser, the Appellees sought to admit a certified copy of the conviction. The Appellants objected. In a bench conference, the Appellees offered the conviction for the purpose of impeachment, asserting that it was admissible under West Virginia Rule of Evidence 609(a)(2)(B). The Appellants opposed the admission of the prior conviction, asserting that the offense of obstructing justice does not necessarily involve dishonesty or false statement. The trial court admitted both the conviction and the underlying complaint, which indicated that the charge was based on the giving of false information to the Wage and Hour Board by Appellant Dick Bowser. The trial court reasoned that this clearly related to the witness' credibility. The cross-examination of Mr. Bowser is not part of the record on appeal, but it appears from the redirect and re-cross examinations, which are included in the record, that the court allowed counsel for both parties to examine Mr. Bowser with respect to the circumstances of the guilty plea.[3]

After hearing all the evidence, the jury returned a verdict for the Appellees in the amount of $23,525, which was the same as the Appellees' real estate appraiser's estimate of the damage. The Appellants filed motions for post-judgment relief, which were denied, and thereafter filed this appeal. On appeal, the Bowsers assign two errors: First, that the verdict was excessive, not the product of a preponderance of the evidence, and based upon conflicting, unfounded, speculative, and conjectural expert opinion; and, second, that the circuit court erred by admitting evidence of the prior misdemeanor conviction of Dick Bowser for the purpose of impeaching his testimony.[4]

We first address the issue of the jury verdict, and note at the outset that, "[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Syl. Pt. 4, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958). The Appellants initially complain of the reliance by the jury and/or the Appellees' expert appraiser on the testimony of the contractor, Joel Stout, that it would cost $8,275 to correct the faulty workmanship. The Appellants assert that Stout's determination of the cost to repair was "incomplete, unprofessional and faulty," based on assertions that his examination of the subject property was incomplete and that he failed to take into account the fact that the Appellees themselves had performed some work on the house. It appears from the record that all facts relevant to this assertion were present-

---

**3.** On redirect, Appellant Dick Bowser explained that he pled guilty to obstruction and paid a $50 fine in order to clear up what he characterized as a misunderstanding. According to the Appellant, he had purchased a warehouse, which included the contents. When the Appellant wanted to use the contents of the warehouse in a project, he was required to reflect the cost of the materials on the building permit application. He maintained that he sought advice from someone associated with the building code about how to treat the warehouse materials. Based on the advice he allegedly received, the Appellant submitted an affidavit signed by the previous owner of the warehouse and its contents saying that the materials had been given to him. Bowser was later charged with giving false information, but was permitted to plead guilty to obstruction and pay

the fine when he explained the surrounding circumstances.

**4.** There was, in addition, some discussion of the proper measure of damages, both in the briefs and at oral argument. The Appellants assigned no error with respect to this issue, however, and the Appellees indicated at oral argument that the instruction on damages was agreed upon by the parties. Because that instruction is not before the Court, and there apparently was no objection to it below, we do not address the issue of the proper measure of damages in this opinion. *See* Syl. Pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981); Syl. Pt. 1, *State Rd. Comm'n v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964).

ed to the jury. The weight ascribable to Mr. Stout's testimony is an issue for the jury, and we will not second-guess that body's conclusions in this regard on appeal. *See* Syl. Pt. 2, *State v. Bailey,* 151 W.Va. 796, 155 S.E.2d 850 (1967).

 Furthermore, with regard to the appraiser's reliance on the contractor's estimate, an expert witness has wide latitude in this matter:

> Rule 703 of the West Virginia Rules of Evidence allows an expert to base his opinion on: (1) personal observations; (2) facts or data, admissible in evidence, and presented to the expert at or before trial; and (3) information otherwise inadmissible in evidence, if this type of information is reasonably relied upon by experts in the witness' field.

Syl. Pt. 2, *Mayhorn v. Logan Medical Found.,* 193 W.Va. 42, 454 S.E.2d 87 (1994). Mr. Stout's testimony falls within the second category, as admissible facts or data presented to the expert at or before trial. We therefore find no error in the appraiser's use of this information.

 The Appellants also complain that the "reduction by purchaser" factor employed by the Appellees' appraiser was speculative and subjective, and ask this Court to grant a new trial on that basis. The Appellants did not, however, object to either Mr. McDaniel's qualification as an expert or to his testimony regarding the "reduction by purchaser" when it was introduced. It has long been the law in this State that "[w]here objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal." Syl. Pt. 1, *State Rd. Comm'n v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964). By failing to object to this evidence at trial, the Appellants waived their right to raise the issue on appeal.[5]

We next address whether evidence of Mr. Bowser's plea of guilty to a misdemeanor charge of obstruction of justice was properly admitted under West Virginia Rule of Evidence 609(a)(2)(B). As set out in syllabus point two of *CGM Contractors v. Contractors Environmental Services, Inc.,* 181 W.Va. 679, 383 S.E.2d 861 (1989),

> Rule 609(a)(2) of the West Virginia Rules of Evidence divides the criminal convictions which can be used to impeach a witness other than a criminal defendant into two categories: (A) crimes "punishable by imprisonment in excess of one year," and (B) crimes "involving dishonesty or false statements regardless of the punishment."

Because obstruction is a misdemeanor punishable by less than a year in prison, the issue presented in the case before us is whether Mr. Bowser's obstruction conviction "involved dishonesty or false statement." West Virginia Code § 61–5–17(a) (Supp.1996) defines the crime of obstructing an officer:

> Any person who by threats, menaces, acts or otherwise, shall forcibly or illegally hinder, obstruct, or oppose, or attempt to obstruct or oppose, or shall counsel, advise or invite others to hinder, obstruct or oppose any officer in this state (whether civil or military) in the lawful exercise or discharge of his official duty, shall, for every such offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be imprisoned not exceeding one year.

The statutory definition includes no mention of dishonesty or false statement. The underlying charge, however, was giving false information to the Wage and Hour Board. The circuit court ruled that the defendant's obstruction conviction fell within Rule 609(a)(2)(B) even though the crime of obstruction does not *necessarily* involve dishonesty or false statement, because false statement was *in fact* a part of the crime to which the defendant pled guilty.

---

5. It should also be noted that once an expert witness is permitted to testify, it is within the province of the jury to evaluate his or her testimony, credentials, background, and qualifica-

tions. The Appellants had ample opportunity to crossexamine the expert and to reveal any weakness in his opinion. *See Cargill v. Balloon Works, Inc.,* 185 W.Va. 142, 405 S.E.2d 642 (1991).

The Appellant urges this Court to adopt the view taken by a minority of courts, which limits application of this provision to crimes such as perjury, false statement, and fraud, which have deceit or falsification as an element of the crime itself. *See, e.g., Cree v. Hatcher,* 969 F.2d 34 (3d Cir.1992) (conviction for willful failure to file federal income tax returns held inadmissible for impeachment because dishonesty or false statement was not an element of the statutory offense); *United States v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980) (drug convictions not admissible for impeachment where dishonesty or false statement was not an element of the crime charged).

This Court, however, has previously indicated a willingness to look beyond the elements of the crime charged to see whether the underlying facts involved untruthfulness. In *State v. Jenkins,* 191 W.Va. 87, 443 S.E.2d 244 (1994), we upheld the exclusion of a prior conviction for larceny, explaining:

> In note 1 of *CGM Contractors, Inc. v. Contractors Environmental Services, Inc.,* 181 W. Va. at 682, 383 S.E.2d at 864, we recognized that crimes falling under Rule 609(a)(2)(B) were often called *crimen falsi:*
>
>> "*Crimen falsi* generally refers 'to crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on a witness' propensity to testify truthfully.' *Black's Law Dictionary* 335 (5th ed.1979)."
>
> Although there has been some disagreement, "federal courts and most state courts are unwilling to conclude that offenses such as petty larceny, shoplifting, robbery, possession of a weapon, and narcotics violations are per se crimes of 'dishonesty and false statement.'" ... *In the*

present case, the defendant failed to show that Mr. Hill's prior conviction of larceny was based on facts showing deceitfulness or falsification. We, therefore, believe that the trial court correctly refused to allow the defendant to impeach Mr. Hill with his prior conviction.

191 W.Va. at 91, 443 S.E.2d at 248 (emphasis added). *See also United States v. Cunningham,* 638 F.2d 696, 698–99 (4th Cir.1981) (conviction for worthless checks properly excluded where no proof that witness's crime involved dishonesty or false statement).

■ Based on these precedents, we conclude that evidence that a witness other than the accused in a criminal case has been convicted of a crime is admissible for the purpose of impeachment under West Virginia Rule of Evidence 609(a)(2)(B) when the underlying facts show that the crime involved dishonesty or false statement.[6] We note that the burden of showing that a conviction is admissible is on the party offering it for impeachment. *See State v. Jenkins,* 191 W.Va. 87, 91, 443 S.E.2d 244, 248 (1994); 1 Franklin Cleckley, *Handbook on West Virginia Evidence* 714 (3d ed.1994). Here, the trial court did not err in first determining whether the crime involved dishonesty or false statement, then admitting the evidence after the Appellees presented evidence showing that the underlying charge was submitting false statements to the Wage and Hour Board.

In the alternative, the Appellants assert that, if admissible, the evidence of Mr. Bowser's prior conviction should have been restricted to the crime charged, the date, and the disposition of the case. This is the rule in federal court, at least with respect to the admission of a criminal defendant's prior convictions. *See, e.g., United States v. Mitchell,* 1 F.3d 235, 245 (4th Cir.1993) (limiting cross-examination to the name of the crime, the

---

6. *See generally* 1 Franklin Cleckley, *Handbook on West Virginia Evidence* 714 (3d ed.1994):

> A substantial gray area exists with respect to offenses which are not *crimen falsi per se* but which may actually have involved dishonesty or a false statement. Counsel relying on a conviction not plainly within FRE 609(a)(2) and WVRE 609(a)(2)(B) should be permitted to demonstrate the conviction's *crimen falsi* char-

acteristics by proving that the offense was committed through false statements or dishonesty. A crime of larceny may not be a *crimen falsi* offense if the thief committed the crime by shoplifting, but a crime of larceny committed through trick or deception would be *crimen falsi* in nature.

(citations omitted).

time and place of conviction, and punishment). It is also recognized that if a witness attempts to explain a guilty plea on direct examination, cross-examination is allowed on facts relevant to the direct examination *See, e.g., United States v. Wolf,* 561 F.2d 1376, 1381 (10th Cir.1977).

In the current situation, that is, an offer of a misdemeanor conviction for the purpose of impeachment under Rule 609(a)(2)(B), the judge should initially receive the evidence offered on the issue of dishonesty or false statement out of the hearing of the jury. *See* W.Va.R.Evid. 103(c). After making a determination that the conviction is admissible, it is within the discretion of the trial judge to allow the parties to present evidence regarding the facts underlying the conviction to the jury, insofar as it is relevant to the witness's ability to testify truthfully.

*See* Syl. Pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983). In the case before us, the court did not abuse its discretion in allowing the jury to hear evidence regarding the underlying charge.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

RECHT, Judge, sitting by temporary assignment.