538 S.E.2d 730

**Jessie L. GRAHAM, Plaintiff below, Appellee,**

v.

**David A. WALLACE, D.D.S., M.S., Defendant below, Appellant.**

No. 27380.

Supreme Court of Appeals of West Virginia.

Submitted June 13, 2000.

Decided July 12, 2000.

Dissenting Opinion of Justice Starcher July 20, 2000.

Kathryn Reed Bayless, Esq., Bayless & McFadden, Princeton, West Virginia, Mark R. Staun, Esq., The Segal Law Firm, Charleston, West Virginia, Attorneys for Appellee.

Ancil G. Ramey, Esq., Darrell E. Baker, Jr., Esq., Steptoe & Johnson, Charleston, West Virginia, Attorneys for Appellant.

**PER CURIAM:**

### I.

This is a medical malpractice case where a jury rendered a verdict for the plaintiff/appellee, Jessie L. Graham, against the defendant/appellant, Dr. David A. Wallace, an oral surgeon. The gravamen of the plaintiff's claim was that Dr. Wallace had been negligent in installing an implant in the plaintiff's jaw—specifically in his temporomandibular joint ("TMJ")—to attempt to alleviate the plaintiff's severe head pain.

A detailed discussion of the underlying facts is unnecessary to this opinion, as we need only address two fairly narrow issues. The first issue is whether the plaintiff's evidence of malpractice was deficient as a matter of law on the issue of the standard of care. The second issue is whether the circuit court committed reversible error in denying Dr. Wallace's request to call two rebuttal witnesses, after the plaintiff was allowed to reopen his case to recall Dr. Wallace to the stand for additional cross-examination.

### II.

#### A.

On the first issue—the asserted insufficiency of the plaintiff's evidence that would permit a jury to conclude that there was a breach of the standard of care by the appellant—we have carefully reviewed the testimony of the appellee's expert witness, Dr. Captline, an oral surgeon. Dr. Captline testified extensively on direct examination to the effect that the appellant had failed to obtain and properly evaluate a full history of the appellee's longstanding psychiatric and neurological headache problems (problems that were in Dr. Captline's opinion largely if not entirely unrelated to the plaintiff's alleged TMJ problems)—and that this failure had substantially contributed to an inappropriate decision by the appellant to perform

TMJ implant surgery on the appellee. (There were also issues of whether the appellee had properly consented to the surgery.) Taken together, Dr. Captline's testimony on direct examination told the jury what Dr. Captline believed a practitioner exercising ordinary skill and care should have done with regard to the appellee's case, and how Dr. Captline believed that the appellant had deviated from that standard.

However, on cross-examination, the appellant's trial counsel was able to elicit from Dr. Captline a number of contradictory and confused statements regarding his opinions. Based on this cross-examination, the jury could have discounted—but were not required to discount—much of Dr. Captline's direct testimony.

■ We have stated that:

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syllabus Point 2, *Tanner v. Rite Aid,* 194 W.Va. 643, 461 S.E.2d 149 (1995) (citations omitted).

We have also stated that "... once an expert witness is permitted to testify, it is within the province of the jury to evaluate his or her testimony, credentials, background and qualifications." *Wilkinson v. Bowser,* 199 W.Va. 92, 96 n. 5, 483 S.E.2d 92, 96 n. 5.

■ In 81 Am.Jur.2d *Witnesses* § 1032 at 844 (1992) (footnotes omitted) it is stated: "When a witness, during the course of his testimony, makes two contradictory statements, it is within the province of the jury to accept and rely on either version and to disregard the other, in part or in toto. If a witness's testimony on direct examination conflicts with that given by him on cross-examination, it is for the jury to decide when, if at all, he testified truthfully." It is the

province of the jury to weigh evidence and resolve inconsistencies in testimony. *See State v. Houston,* 197 W.Va. 215, 230, 475 S.E.2d 307, 322 (1996). On appeal of a plaintiff's verdict, we are required to assume that a (properly instructed) jury credited the evidence that was favorable to the plaintiff's case and discredited the evidence that was unfavorable to that case. *See* Syllabus Point 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ As both a matter of law and as a practical matter, a trial court viewing the evidentiary sufficiency of a party's *prima facie* case—or an appellate court assessing the sufficiency of evidence where a jury has returned a verdict for a party (as we are doing in the instant case)—simply cannot be required to dissect, analyze, or weigh a party's evidence through the lens of what occurred in cross-examination of a party's witnesses, or of what evidence the opposing party put on in rebuttal—to determine whether a litigant made a sufficient evidentiary case to go to a jury. Such dissection, analysis and weighing would invade the province of the jury. If in the instant case—as the trial court found and we agree—the plaintiff's case-in-chief through his witnesses' direct testimony and other evidence established a *prima facie* violation of the standard of care, then the plaintiff met his burden so as to permit submitting that issue to the jury—without regard to how the plaintiff's case-in-chief might have been weakened by the defense through cross-examination or rebuttal.

We therefore conclude that the appellant's contention on appeal that the plaintiff's case should not have been submitted to the jury for lack of sufficient evidence establishing a violation of the standard of care is not meritorious.

**B.**

We next turn to the issue of the circuit court's reopening of the case after both parties had rested—for additional cross-examination of Dr. Wallace—and to the issue of the court's refusal to allow Dr. Wallace to

call two rebuttal witnesses, once the case had been reopened.

The presentation of evidence by both sides concluded on Thursday, March 11, 1999, after 4 days of testimony. On the morning of Friday, March 12, 1999, Mr. Graham's counsel asked the trial court to reopen the case for additional cross-examination of Dr. Wallace. Graham's counsel asserted that because Dr. Wallace had referred in his testimony to certain notes in Graham's medical records that allegedly had not been produced in discovery, "the notes that were contained in the record of this case were put in at least 6 years after the[y] allegedly were supposed to have been placed."

The jury was recalled to the courtroom and Graham was permitted to cross-examine Dr. Wallace regarding these notes. Mr. Graham's counsel attempted to impeach Dr. Wallace by, *inter alia*, suggesting that the notations had not been produced in discovery.

Dr. Wallace, when questioned by his counsel, denied any suggestion of misconduct with respect to the records. Dr. Wallace testified that the notations could not have been made in anticipation of trial because they appeared on a photocopy that had been made in 1987, apparently in connection with requests from Graham's insurance companies.

Following Dr. Wallace's testimony, Graham's counsel moved for a mistrial:

MR. STAUN: Your Honor, at this time I would like to move for a mistrial or move for a continuance to further investigate this matter. That is the only way we are going to get to the truth of this matter.
MR. BAKER: Your Honor, we have 2 witnesses that can come in here and testify—
THE COURT: Your motion for a mistrial is overruled and your motion for a continuance is overruled. Are we ready to proceed?

At this point in the trial, Dr. Wallace requested an opportunity to put on two rebuttal witnesses who could refute the suggestion of misconduct with regard to the documents. The trial court denied this request, stating that the court believed that Dr. Wallace had handled the document issue adequately, and

that putting on more witnesses would almost certainly require a continuance and more discovery. However, the court allowed Dr. Wallace to make a proffer through the testimony of his office manager and one of his former employees. They explained how in their view there was no record falsification or failure to produce documents.

During a later hearing on post-trial motions, the trial judge stated:

... with the exception of whether or not I should have allowed you to put these secretaries on.... This record will show that I am troubled about opening the case back up again and placing limitations on you. Maybe that might have changed the perception of the jury. I've tried to think about the case since and I'm more convinced that the jury may have somewhat misunderstood the real point of the case .... Although, I am concerned about you shutting the door on you at the end because of other problems I had with the case, I do believe it was a fair trial and I will not set aside the verdict.... I may have made a mistake by not letting those other witnesses testify and the Supreme Court can correct it.

■ Because there appears to have been no contemporaneous objection by Dr. Wallace's counsel to the actual re-opening of the case, we decline to consider whether the trial judge abused his discretion in doing so. However, we have held that such re-opening is well within a trial court's discretion, as we stated in Syllabus Point 4 of *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973):

A motion to reopen a case to permit the introduction of further evidence is addressed to the sound discretion of the trial court and the exercise of such discretion is not subject to review by an appellate court unless there has been an abuse thereof.

With respect to the circuit court's refusal to allow Dr. Wallace to call two rebuttal witnesses to testify regarding the documents about which the plaintiff had questioned Dr. Wallace, that asserted error was fully preserved by objection—and the appellant properly made a proffer of the proposed witnesses' testimony.

In *State v. Sandler,* 175 W.Va. 572, 576, 336 S.E.2d 535, 539 (1985), we stated:

> "[W]hen a case is reopened for the reception of further evidence, *it must be done in such a manner that the rights of all parties will be protected and ample opportunity afforded them for cross examination or rebuttal. . . .*"

(Citation omitted, emphasis added.)

The instant case was clearly a close one—on liability, causation, and damages. The trial court—not unreasonably, we think—believed that Dr. Wallace had done a sufficient job of explaining why, based on his normal office procedures, the plaintiff's suggestion of record misconduct was groundless.

However, the jury could have seen Dr. Wallace's interest in the case as tainting his testimony. Moreover, Dr. Wallace could only surmise, based on his ordinary office procedures, as to how his employees had actually handled the documents in question. The jury was denied the opportunity to hear the plaintiff's suggestion of misconduct refuted by less interested witnesses who were directly involved with the documents in question.

■ In such a close case, this apparently minor issue of possible document misconduct could have tilted the balance of the trial. With due respect to the trial judge and with the benefit of hindsight, we think that fairness to Dr. Wallace required that he be able to refute the suggestion of document-related misconduct with witnesses who could testify from their direct knowledge. For this reason, we conclude that it was prejudicial error and an abuse of discretion not to allow Dr. Wallace to put his two rebuttal witnesses on the stand.

### III.

This case is reversed and remanded for a new trial.

Reversed and Remanded.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Judge MICHAEL THORNSBURY, sitting by special assignment.

Justice McGRAW dissents.

STARCHER, Justice, dissenting:

(Filed July 20, 2000)

If this Court gets into reversing jury verdicts on the basis of a trial judge's discretionary call on whether to allow rebuttal witnesses, we are going to need to amend our *Constitution*—to hire some new justices!

*Nothing* is more committed to a trial judge's discretion than a decision on rebuttal testimony. As a trial judge, I almost never allowed it. Litigants always want to have the "last word," and lawyers can always make "fairness" arguments as to why they need rebuttal.

This trial judge properly exercised his discretion and concluded—and the record bears this out—that Dr. Wallace had well explained the document issue. The majority is being swayed by the "expert" issue to find error in the rebuttal issue. There was no error on either issue and this verdict should stand.