475 S.E.2d 62

**Jeanna Rebecca CRADDOCK, Plaintiff Below, Appellant,**

v.

**Bennett L. WATSON and Barboursville Transfer, Inc., Defendants Below, Appellees.**

No. 23047.

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1996.

Decided July 3, 1996.

---

Jeffrey A. Taylor, Meyer and Ford, Charleston, for Appellant.

Brent K. Kesner, Tanya M. Kesner, Kesner, Kesner & Bramble, Charleston, for Appellees.

PER CURIAM:

Jeanna Rebecca Craddock appeals a summary judgment order of the Circuit Court of Cabell County dismissing her complaint against Bennett L. Watson and Barboursville Transfer, Inc. On appeal, Ms. Craddock asserts that the circuit court erred in refusing

to consider the testimony of two of her witnesses and in granting summary judgment concerning the parties' respective liability for an accident that occurred on December 28, 1992. Because we find no abuse of discretion by the circuit court in refusing to consider the testimony of Ms. Craddock's witnesses and because the record could not lead a rational trier of fact to find for Ms. Craddock, the nonmoving party, we affirm the decision of the circuit court.

## I.

## FACTS AND BACKGROUND

At about 11:15 a.m., December 28, 1992, an accident occurred between an automobile driven by Ms. Craddock and a tractor-trailer driven by Mr. Watson and owned by Barboursville Transfer, Inc., on Madison Creek Road, near Salt Rock, Cabell County. Madison Creek Road is a narrow blacktopped two-lane road with many curves and dips. Since the accident, guard rails have been placed on the right side of the road, which at the time of the accident had a berm of only one or two inches where the accident occurred. The road was wet from rain earlier in the day. Ms. Craddock, who was accompanied by Marty Lowe, was traveling south toward Logan, and Mr. Watson, who had delivered his cargo, was traveling north toward Huntington. The collision involved the front drivers' sides of both vehicles with an estimate vehicle overlap of 30 to 40 percent. As a result of the accident, Mr. Watson's tractor-trailer went off the road on the right side of the northbound lane, down a steep embankment and came to rest on its side. Mr. Watson was severely injured. As a result of the accident, Ms. Craddock's car rotated in a counterclockwise direction away from the point of impact and came to rest headed north in its own travel lane. Ms. Craddock was severely injured and Mr. Lowe, her passenger, received cuts and bruises.

The persons involved in the accident gave differing accounts. Except for slamming on her brakes, Ms. Craddock does not remember anything about the accident or even seeing the tractor-trailer. Mr. Lowe said that as Ms. Craddock's car came over a hill and was going into a curve, he looked up and saw the tractor-trailer. Mr. Lowe said that "[b]efore the impact, she [Ms. Craddock] was on her side of the road . . . [but that he did] not with any certainty" know in which lane the accident occurred.[1] Mr. Lowe did not notice that Ms. Craddock applied the brakes but did think she had turned the car toward the right, away from the center. Mr. Watson testified that Ms. Craddock "was over on my side of the road. When she come [sic] around that curve, she come [sic] over a little hump and it raised her car up. That's when she hit the truck."

Corporal Lowe of the Cabell County's Sheriff Department investigated the accident and noted in the accident report that the point of impact was in the northbound, or tractor-trailer's, lane. The corporal reached the conclusion that the accident occurred in the tractor-trailer's lane because of the tractor-trailer's gouge marks, the resting places of both vehicles, and the debris on the road. The accident report noted that a contributing factor was Ms. Craddock's "[f]ailure to maintain control." The corporal was unable to give road measurements because he lost the notes he took at the time of the accident.[2] Trooper Kidd of the State Police, who was at the scene shortly after the accident occurred as well, also concluded that the accident occurred in the northbound, or tractor-trailer's, lane. The trooper based his conclusion on his examination of the accident site and the positions of the vehicles after the accident.

In support of her case, Ms. Craddock offered several witnesses. The testimony of

---

1. In her brief, Ms. Craddock cites to six places in Mr. Lowe's deposition where he supposedly testified that Mr. Watson's tractor-trailer was "across the center line." However, a careful reading of Mr. Lowe's deposition indicates that he did not see which lane the tractor-trailer was in before the accident but "felt, that the truck was crowding us in; we didn't have enough room to get around it." Mr. Lowe also said he thought he "would remember if she had been driving on the wrong side" but did not know "with any certainty" in which lane the accident occurred.

2. The deputy was unable to get the pictures taken at the time of the accident developed.

two of her witnesses, William Thompson and Philip Key, was excluded by the circuit court as not relevant. Both of the excluded witnesses were professional truck drivers who had driven tractor-trailers over Madison Creek Road. However, the testimony of Russell R. Haynes, Ph.D., P.E., an expert in accident reconstruction, was permitted. Dr. Haynes found that a tractor-trailer could, without crossing the center line, successfully negotiate the area of the road where the accident happened. Dr. Haynes also thought that the accident probably occurred in the tractor-trailer's lane. When Dr. Haynes was asked if it was possible for the tractor-trailer to have been over the center line just before the accident, Dr. Haynes indicated that it was possible, but there was no evidence of the tractor-trailer crossing the center line.

Arguing that neither Mr. Thompson nor Mr. Key had any specialized knowledge that would assist a trier of fact, Mr. Watson filed a motion *in limine* to exclude their testimony. Mr. Watson also filed a motion for summary judgment claiming that there was no dispute about any genuine issue of material fact. By order entered on January 26, 1995, the circuit court excluded the testimony of Mr. Thompson and Mr. Key and granted summary judgment to Mr. Watson.

Ms. Craddock appeals to this Court contending that the testimony of Mr. Thompson and Mr. Key should not have been excluded and that summary judgment was improper because of the existence of a dispute about negligence of Mr. Watson, a genuine issue of material fact.

## II.

### STANDARD OF REVIEW

■ Recently in *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995), we reaffirmed that a circuit court has considerable latitude under the West Virginia Rules of Evidence in determining whether to admit evidence as relevant under Rules 401, 402 and 403, and decisions concerning relevancy are reviewed under an abuse of discretion standard. "A party challenging a circuit court's evidentiary rulings has an onerous burden because a reviewing court gives special deference to the evidentiary rulings of a circuit court. [Footnote omitted.]" *Gentry v. Mangum*, 195 W.Va. at 518, 466 S.E.2d at 177. Syl. pt. 1 of *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995) states:

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

*See Meadows v. Meadows*, 196 W.Va. 56, 468 S.E.2d 309 (1996).

■ In *Gentry v. Mangum*, we noted that we review *de novo* a "trial court's determination regarding whether the scientific evidence is properly the subject of scientific, technical, or other specialized knowledge [as] ... a question of law...." Syl. pt. 3, in part, *Gentry v. Mangum*. Rule 702 of the West Virginia Rules of Evidence permits opinion testimony by experts when the witness is "qualified as an expert by knowledge, skill, experience, training or education," and "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Therefore, we review a circuit court's exclusion of expert testimony *de novo* regarding whether that testimony is properly the subject of scientific, technical or other specialized knowledge and we apply an abuse of discretion standard to the circuit court's determination of relevancy. In its entirety, Syl. pt. 3 of *Gentry v. Mangum*, states:

> The first and universal requirement for the admissibility of scientific evidence is that the evidence must be both "reliable" and "relevant." Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, [506] U.S. [579], 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert denied*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994), the reliability requirement is met

only by a finding by the trial court under Rule 104(a) of the West Virginia Rules of Evidence that the *scientific* or technical theory which is the basis for the test results is indeed "scientific, technical, or specialized knowledge." The trial court's determination regarding whether the scientific evidence is properly the subject of scientific, technical, or other specialized knowledge is a question of law that we review *de novo*. On the other hand, the relevancy requirement compels the trial judge to determine, under Rule 104(a), that the scientific evidence "will assist the trier of fact to understand the evidence or to determine a fact in issue." W.Va. R.Evid. 702. Appellate review of the trial court's rulings under the relevancy requirement is under an abuse of discretion standard. *State v. Beard,* 194 W.Va. 740, 746, 461 S.E.2d 486, 492 (1995).

■■■ Because summary judgment was granted to Mr. Watson, we must also consider the appropriateness of summary judgment in this case. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). *In accord Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 335, *rehearing denied* (1995). Our traditional standard for granting summary judgment is stated in Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *In accord* Syl. pt. 1, *Williams v. Precision Coil, Inc. supra;* Syl. pt. 2, *Painter v. Peavy, supra.* In Syl. pt. 2 of *Williams v. Precision Coil, Inc.,* we stated:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

■■■ According to *Gentry v. Mangum,* 195 W.Va. at 519, 466 S.E.2d at 178, "[o]n a motion for summary judgment, however, a circuit court cannot try issues of fact; it can only determine whether there are issues to be tried." An issue of fact is " 'genuine' when the evidence relevant to it, viewed in the light most favorable to the party opposing the motion, is sufficiently open ended to permit a rational factfinder to resolve the issue in favor of either side." *Gentry v. Mangum,* 195 W.Va. at 519, 466 S.E.2d at 178. In Syl. pt. 5 of *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995), we explained what, under Rule 56(c), is a "genuine issue" by stating:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

*In accord* Syl. pt. 2, *Morton v. Amos–Lee Securities, Inc.,* 195 W.Va. 691, 466 S.E.2d 542 (1995).

In *Gentry v. Mangum,* 195 W.Va. at 519, 466 S.E.2d at 178, we noted that our review is "plenary" when "the summary judgment standard requires the circuit court to make a legal determination rather than to engage in differential fact finding." A "stringent" review is applied "where the granting of summary judgment is dependent on the exclusion of expert testimony." *Gentry v. Mangum,* 195 W.Va. at 519, 466 S.E.2d at 178. *See State v. Sutphin,* 195 W.Va. 551, 466 S.E.2d 402 (1995).

In this case, because the circuit court excluded the testimony of two of Ms. Craddock's witnesses as "not relevant to any issue in the case at hand," we apply an abuse of discretion standard to the circuit court's de-

termination of relevancy.[3] We review the circuit court's granting of summary judgment by examining the record to determine if, when viewed in the light most favorable to Ms. Craddock, the party opposing the motion, there is sufficient evidence to permit a rational factfinder to resolve the disputed issue in her favor.

## III.

### DISCUSSION

#### A.

##### Motion in Limine

■ Ms. Craddock offered the testimony of Mr. Thompson and Mr. Key, both of whom had driven tractor-trailers over Madison Creek Road many times. Both men are experienced professional truck drivers who were friends of Ms. Craddock's father, and Mr. Thompson is the former husband of Ms. Craddock's aunt. Neither had driven over Madison Creek Road within one year preceding the accident; neither knew the exact location of the accident; neither witnessed the accident; neither had been at the scene shortly after the accident; but both had discussed the accident with Ms. Craddock's father. Both drivers were prepared to testify that because of the road's condition, a tractor-trailer traveling northward could not always stay in its lane of travel.

Mr. Watson filed a motion in limine requesting the exclusion of the testimony of Mr. Thompson and Mr. Key because they "possess no scientific, technical or other specialized knowledge which would assist the trier of fact." [4] According to Ms. Craddock, the testimony of Mr. Thompson and Mr. Key was "offered . . . to prove that it is necessary for the driver of a tractor-trailer truck similar in size to the one involved in the instant case to go left of center when traveling in a northerly direction on Madison Creek Road just before the point of the accident."

However, Dr. Haynes, Ms. Craddock's expert in accident reconstruction, testified that there were only two places on Madison Creek Road that a tractor-trailer traveling north toward the accident scene would be unable to remain in its traffic lane. The closest troublesome curve was five-tenths (.5) of a mile south of the accident scene and the other was around a one lane bridge. Dr. Haynes said that to a reasonable degree of certainty, he concluded that the accident occurred "near the center line but in the truck's travel lane; in other words, the northbound lane." Mr. Watson testified that except for the one lane bridge, he had remained in his lane of traffic while traveling on Madison Creek Road.

The circuit court found that although Mr. Thompson and Mr. Key were experienced as tractor-trailer drivers who had personally driven left of center in the area where the accident occurred, "such testimony is not relevant to show that the Defendant, Bennett L. Watson, drove his vehicle left of center at the time of the accident." In *State v. LaRock,* 196 W.Va. 294, 307, 470 S.E.2d 613, 626 (1996), we "suggested that evidence which is no more than speculation is not admissible under Rule 702." *See Gentry v. Mangum,* 195 W.Va. at 527, 466 S.E.2d at 186, *quoting, Newman v. Hy–Way Heat Systems, Inc.,* 789 F.2d 269, 270 (4th Cir.1986) ("nothing in the Rules appears to have been intended to permit experts to speculate in fashions unsupported by, and in this case indeed in contradiction of, the uncontroverted evidence").

In this case, we examine the circuit court's refusal under an abuse of discretion standard because the circuit court did not find the testimony relevant. Rule 401 of the West

---

**3.** The circuit court's order did not specify which Rule of Evidence barred the testimony of Mr. Thompson and Mr. Key. However, because the testimony was considered "not relevant to any issue in the case at hand," the circuit court must have rejected it under Rules 401, 402 and 403 of the West Virginia Rules of Evidence.

**4.** Although the defense's motion does not cite any rule, the motion seems to be based on Rule 702

of the West Virginia Rules of Evidence, which states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Virginia Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Given the evidence presented by Dr. Haynes concerning where a tractor-trailer traveling over Madison Creek Road must cross the center line, we find that the circuit court did not abuse its discretion in finding inadmissible the unsupported speculation of Mr. Thompson and Mr. Key, and we affirm that portion of the order of the Circuit Court of Cabell County.

## B.

### Summary Judgment

▮ This case's central issue is the appropriateness of summary judgment. On appeal, Ms. Craddock maintains: first, that there is a question of fact concerning the lane in which the accident occurred; and second, that the accident was caused by Mr. Watson's tractor-trailer crossing the center line immediately before the accident. Ms. Craddock asserts that Mr. Lowe, Ms. Craddock's passenger, testified Mr. Watson's tractor-trailer was across the center line, and for support cites to six (6) places in Mr. Lowe's testimony. We have carefully reviewed Mr.

Lowe's testimony and have paid particular attention to the sections Ms. Craddock cited. However, Mr. Lowe never said that he could state "with any certainty" that he saw Mr. Watson's tractor-trailer across the center line.[5]

Overwhelming evidence in the record indicates that the accident occurred in the tractor-trailer's lane: (1) Corporal Lowe's examination of the accident scene; (2) Trooper Kidd's examination of the accident scene; (3) Mr. Watson's testimony; and (4) the testimony of plaintiff's own expert, Dr. Haynes. Indeed, the only suggestion to the contrary is Mr. Lowe's unsupported belief that Ms. Craddock was in her lane of travel. However, Mr. Lowe acknowledges that, after he saw the front of the tractor-trailer, he "never looked down to see where . . . [he] was in relation to the lanes at that point."

▮ Ms. Craddock postulates a "sled" theory concerning the proximate cause of the accident, in which she argues that because the tractor-trailer was over the center line when she first saw it, she slammed on her brakes causing her car to act as a "sled" by sliding into the tractor-trailer which now had returned to its own lane of travel. Dr. Haynes, Ms. Craddock's expert, opines that such a possibility exists but could not "state

---

**5.** The following testimony was given by Mr. Lowe and cited in Ms. Craddock's brief:

Q: (David Ray, Esq.) Marty, I've got just a couple of questions for you. I know that there were several questions asked of you as to whether or not you were looking at the center line and so forth, and you've acknowledged that you were not looking specifically at the center line whenever you first saw the tractor and trailer; is that correct?

A: (Mr. Lowe) That's right.

Q: So, that's what—am I correct that that's [sic] what you mean whenever you say you cannot say with certainty that the truck was across the center line when you first saw it was because of the fact that you were not staring at the center line at that point?

A: Yes.

Q: Now, you also stated that it was your feeling that the truck was crowding you. From where you were seated in the—in Jeanna's car—and I'm talking about at the point when you first saw the tractor and trailer—was it your impression and belief that you-all were in your—in Jeanna's or your-all's [sic] lane of traffic, the southbound lane of traffic?

A: Yes.

Q: Completely, and not across the center line?

A: Yes.

Q: Was it also your impression and belief—from where you were seated in the vehicle and what you saw in regard to the tractor and trailer, was it your impression and belief that the tractor and trailer was on or across the center line over into your-all's [sic] lane of traffic? And again, I realize that you were not looking at the center line, but was that your impression and belief at the time when you first saw the tractor and trailer?

A: Yeah, that's my belief.

Note: Mr. Lowe's deposition identifies Mr. Ray as appearing on behalf of the defendants. However, Trooper Kidd's deposition identifies Mr. Ray as appearing on behalf of the plaintiff, and the circuit court's final order, which was prepared by B. Karleton Kesner, Esq., counsel for Barboursville Transfer and approved by R.R. Fredeking, II, Esq., counsel for Mr. Watson, notes Jeffrey A. Taylor, Esq. and Mr. Ray, as counsel for the plaintiff, inspected and approved the order as to form.

with any reasonable degree of certainty whether that [the "sled" theory] occurred." The record fails to provide any support for that theory and the alleged actions on which the theory is based are contradicted by the testimony of Ms. Craddock and Mr. Lowe. Ms. Craddock testified that she slammed on her brakes; however, Mr. Lowe did not recall any application of the car's brakes but did think Ms. Craddock turned the steering wheel to the right. After the accident, the front wheels of Ms. Craddock's car were in an extreme right turn position. Mr. Lowe testified that it was "[j]ust a few seconds" from when he first saw the tractor-trailer until the accident.

Based on our examination of the record, we affirm the circuit court's granting of summary judgment because all the evidence in the record supports the conclusion that the accident occurred in the tractor-trailer lane of traffic. The only allegation to the contrary, namely, Mr. Lowe's testimony, does not support a different conclusion. Mr. Lowe's testimony does not present a "genuine issue" for the purposes of Rule 56(c) of the West Virginia Rules of Civil Procedure because his belief without "any certainty," and without noticing in what lane the accident occurred, does not provide "sufficient evidence favoring the non-moving party [Ms. Craddock] for a reasonable jury to return a verdict for that party." Syl. pt. 5, in part, *Jividen v. Law, supra.*

Similarly, Ms. Craddock's "sled" theory, which was not supported by the record, does not present a "genuine issue for trial" as required by *Painter v. Peavy* and its progeny.[6] Rule 56 is "'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law." *Williams v. Precision Coil, Inc.,* 194 W.Va. at 58, 459 S.E.2d at 335, *quoting,*

*Painter v. Peavy,* 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting, Oakes v. Monongahela Power Co.,* 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). A theory without any supporting facts does not meet Rule 56(e)'s explicit mandate for "specific facts." Rule 56(e) states, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. (Emphasis added.)

For the above stated reasons, we affirm the order of the Circuit Court of Cabell County granting summary judgment in favor of the defendants.

Affirmed.

---

**6.** When we consider the "sled" theory in light of the testimony of Mr. Thompson and Mr. Keys that when they drove a tractor-trailer in the general area where the accident occurred, they crossed the center line because of the narrow road, we still find no factual support for the theory. The way Mr. Thompson and Mr. Keys drove that section of road was not necessitated by the road structure, according to Dr. Haynes, Ms. Craddock's expert, and therefore, the testimony does not provide any evidence concerning where Mr. Watson's tractor-trailer was on the day of the accident. *See* section III.A., *supra,* for a discussion of the exclusion of the testimony of Mr. Thompson and Mr. Keys.